# United States District Court
# Central District of California

| | |
|---|---|
| 924 BEL AIR ROAD, LLC,<br><br>     Plaintiffs,<br><br>  v.<br><br>ZILLOW GROUP, INC.; ZILLOW, INC.; and DOES 1 THROUGH 10, INCLUSIVE<br><br>     Defendants. | Case № 2:19-CV-01368-ODW (AFMx)<br><br>**ORDER GRANTING MOTION TO DISMISS [27]** |

## I.  INTRODUCTION

Before the Court is Defendants Zillow Group, Inc. and Zillow, Inc.'s (collectively, "Zillow") Motion to Dismiss for failure to state a claim ("Motion"). (Mot. to Dismiss ("Mot."), ECF No. 27.)[1] For the following reasons, Zillow's Motion is **GRANTED**.

## II.  FACTUAL BACKGROUND

924 Bel Air Road, LLC ("Bel Air") is a California limited liability company with a principal place of business in Los Angeles, California. (First Amended Complaint ("FAC") ¶ 4, ECF No. 24.) Bel Air owned property located at 924 Bel Air

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Road, Los Angeles, CA 90077, which it listed and marketed for sale for $150,000,000 through two brokers. (FAC ¶ 17.)

Zillow operates an online residential real estate database that is publicly available at Zillow.com (the "Website") and its subpages ("Residence Pages"). (FAC ¶¶ 9–10.) Zillow publishes information for approximately 110 million homes across the United States on the Website. (FAC ¶ 10.) The Residence Pages include information about property taxes, tax history, schools, lot dimensions, and listing prices. (FAC ¶ 10.)

To claim ownership of a Residence Page on the Website, a user must answer a series of questions. (FAC ¶¶ 13, 15.) If a user attempts to claim a Residence Page enough times, they can learn the questions asked and what information is required for identity verification. (FAC ¶ 15, Ex. F.) The parties' dispute centers around three specific postings on the Residence Page for Bel Air's 38,000 square-foot residential property ("Property"). (FAC ¶ 22; Mot. 2–3.)[2]

On or about February 6, 2019, a third-party user unknown to both parties ("User X") claimed the Property's Residence Page and falsely posted that the Property had sold on February 4 for $110,000,000. (Mot. 3; FAC ¶ 22, Ex. A.) Bel Air learned about the posting on February 7 and contacted Zillow's Help Center. (Mot. 3; FAC Ex. E.) That same day, a Zillow representative informed Bel Air that Zillow was working to resolve the issue. (Mot. 3; FAC Ex. E.)

Two days later, on February 9, User X posted that the Property had sold on February 9 for $90,540,000. (FAC ¶ 22, Ex. C.) Bel Air immediately notified Zillow's Help Center about the second false posting. (Mot. 4; FAC Ex. E.) The next day, User X posted that the property had sold on February 10 for $94,300,000. (FAC ¶ 22, Ex. D.) On February 12, Bel Air began threatening Zillow with legal action.

---

[2] The parties dispute the source of a fourth posting on the Property's Residence Page regarding an Open House. Bel Air claims this was another false posting, while Zillow identifies Bel Air's brokers as the posting's source. (FAC ¶ 22; Mot. 4.) For the limited purposes of this Motion, the Court relies on neither party's rendition in its analysis.

(Mot. 3–4; FAC Ex. E.) That day, Zillow informed Bel Air that the false posting had been removed and Zillow was looking into the source of the false postings. (FAC Exs. E, F.)[3]

Two days later, after an internal investigation, Zillow reported to Bel Air the series of events that had transpired, shared User X's IP address, and blocked User X from the Website. (FAC Ex. F.) Through this communication with Zillow, Bel Air learned that Zillow's internal monitoring system does not involve manually verifying the identity of each user who claims a Residence Page. (FAC Ex. F.)[4]

Bel Air commenced this action on February 24, 2019, and subsequently amended its Complaint on June 3, 2019. (ECF Nos. 1, 24.) Bel Air asserts a single negligence cause of action against Zillow. (FAC ¶¶ 35–49.) Bel Air alleges that Zillow's internal monitoring system allowed User X to publish false information that removed the property from the "elite status of a $100M plus property" and shifted the market perception to a heavily discounted sale price, thus damaging Bel Air. (FAC ¶¶ 24, 49.) Zillow moves to dismiss Bel Air's complaint for failure to state a claim upon which relief can be granted. (Mot. 5); *see* Fed. R. Civ. P. 12(b)(6).

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to

---

[3] For the duration of these events, the Property remained for sale for $150,000,000. (*See* FAC ¶ 17.) After the Court took the Motion under submission, Bel Air submitted a Request that the Court consider that the property had sold, presumably to adjust the damages requested. (ECF No. 33.) For reasons consistent with the disposition of this Motion, Bel Air's Request is **DENIED** as moot.

[4] Although Zillow's system does not manually verify Website users' identities, when another user attempted to claim the Residence Page on February 15, 2019, Zillow contacted Bel Air to determine if that user was affiliated with Bel Air. (FAC Ex. F.) When Bel Air denied any affiliation, Zillow blocked the user and offered to auto-claim the Residence Page on Bel Air's behalf. (FAC Ex. F.)

3

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings but may also consider material submitted with the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Id.* at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### IV. DISCUSSION

Zillow moves to dismiss Bel Air's Complaint as barred by the immunity provisions of the Communications Decency Act or, in the alternative, for a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. 1–2.)

The Communications Decency Act ("CDA") protects from liability "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat,

under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009). This immunity applies to the extent that the "interactive computer service" provider does not also function as an "information content provider" for the publication at issue. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162–63 (9th Cir. 2008); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).

"[A]ny activity that can be boiled down to deciding whether to [include or] exclude material that third parties seek to post online is perforce immune under [47 U.S.C. § 230]." *Roomates*, 521 F.3d at 1170–71. Thus, "a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence." *Barnes*, 570 F.3d at 1102. "Nor can he or she escape section 230(c) by [re]labeling . . . an action that is quintessentially that of a publisher." *Id.* at 1102–03; *see also id.* at 1101 (citing cases and noting that other Circuits have recognized CDA immunity in many causes of action premised on publication, including fraud, negligence, false light, and violation of anti-discrimination laws). Accordingly, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Id.* at 1102.

The parties dispute the applicability of the CDA's immunity provisions. Zillow contends that Bel Air's key allegations center around User X's posting of false information and, because Bel Air's negligence claim seeks to hold Zillow liable as a publisher of that content, Zillow is entitled to CDA immunity. (Mot. 6–7.) Bel Air argues it's negligence claim does not treat Zillow as a publisher because the claim is based, not on the published content, but on Zillow's allegedly "inadequate monitoring system" that allowed User X to post that false content to the Residence Page. (Opp'n to Mot. ("Opp'n") 2, ECF No. 30; FAC ¶ 29.)

The Fifth Circuit persuasively addressed this very distinction in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008). There, the plaintiff's underage daughter lied about her age in an online profile and was subsequently sexually assaulted by someone she met online. *Id.* at 416. Plaintiffs sued the defendant website for negligence, among other things, and attempted to avoid the bar of CDA immunity by arguing the case was not about publication but instead the defendant's "failure to implement basic safety measures to protect minors." *Id.* at 419. The Court concluded that CDA immunity barred the plaintiffs' claims: "[the plaintiffs'] allegations are merely another way of claiming that [the defendant] was liable for publishing the communications and they speak to [the defendant's] role as a publisher of online third-party-generated content." *Id.* at 420. The Ninth Circuit is in accord. *See Barnes*, 570 F.3d at 1098–99, 1106 (finding CDA immunity barred negligent undertaking claim where plaintiff sued defendant website for failing to remove an indecent false profile of plaintiff created by a former boyfriend); *Carafano*, 339 F.3d at 1121–22, 1125 (finding CDA immunity barred claims including negligence where basis of claim was that the defendant website failed to review each user-created profile to ensure it was not defamatory[5]).

So too here. Despite Bel Air's repeated assertions that it does not seek to treat Zillow as a publisher, the FAC is replete with allegations of Zillow's "publishing" or the equivalent. Bel Air alleges "[t]his case is about the monitoring of incoming requests to 'claim' a Residence Page [which] results in the publication of false third-party information" (FAC ¶ 12); as a result of the "faulty internal system, [Zillow] published . . . false statements" (FAC ¶ 22); and Zillow's "defective" "internal monitoring system" allowed an imposter to "make changes to the Residence Page," "resulting in the dissemination of misleading, false, and inaccurate information" (FAC ¶¶ 23, 24; *see also* FAC ¶¶ 35–49 (referring repeatedly to the posting of false information).) No matter how artfully Bel Air seeks to plead, its allegations make

---

[5] The Ninth Circuit discussed *Carafano* in these terms in *Roommates*, 521 F.3d at 1171.

clear that Bel Air's claims are merely another way of holding Zillow liable for publishing User X's content, and are thus directed toward Zillow as a publisher, editor, or screener. *See Barnes*, 570 F.3d at 1102–03; *Doe*, 528 F.3d at 420.

Ultimately, Bel Air's allegations boil down to a charge that Zillow must prevent users from falsely claiming a Residence Page or posting false content. Yet, reviewing each user's activity and postings to ensure their accuracy is precisely the kind of activity for which Congress intended section 230 to provide immunity. *Roommates*, 521 F.3d at 1171–72. Further, "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1103.

The Ninth Circuit has noted that "[w]ebsites are complicated enterprises, and there will always be close cases where a clever lawyer could argue that *something* the website operator did encouraged the illegality. Such close cases, we believe, must be resolved in favor of immunity, lest we cut the heart out of section 230 . . . ." *Roommates*, 521 F.3d at 1174. The Court does not find this to be a close case. Bel Air's negligence claim against Zillow falls squarely within the bounds of CDA immunity. The duty that Bel Air alleges Zillow violated, to monitor new users and prevent or remove false claims or postings, derives from Zillow's status and conduct as a publisher. *See Barnes*, 570 F.3d at 1102. Bel Air's protestations of "novelty" and attempts to circumvent CDA immunity by using new labels for what is inherently publisher's conduct do not change this claim's fundamental character.

Bel Air's Complaint against Zillow is barred as a matter of law by section 230(c). Accordingly, the Court **GRANTS** Zillow's Motion to Dismiss. No amendment could cure this deficiency, so dismissal is without leave to amend.

As the Court finds Bel Air's Complaint barred as a matter of law under the CDA, it does not reach Zillow's argument that Bel Air failed to state a claim under Rule 12(b)(6).

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Zillow's Motion to Dismiss without leave to amend. (ECF No. 27.)

**IT IS SO ORDERED.**

February 18, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**